**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE PARENT PROJECT FOR MUSCULAR DYSTROPHY RESEARCH, INC, | : : : : | |
| *Plaintiff*, | : : | Civil Action No. 2:22-cv-04432-MHW-EPD |
| v. | : : | Judge Michael H. Watson |
| RESEARCH INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL, d/b/a THE ABIGAIL WEXNER RESEARCH INSTITUTE, | : : : : : : | Magistrate Judge Elizabeth A. Preston Deavers |
| *Defendant*. | : : | |

**MOTION TO DISMISS BY DEFENDANT THE RESEARCH**
**INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL**

Defendant the Research Institute at Nationwide Children's Hospital doing business as the Abigail Wexner Research Institute ("NCH") respectfully moves this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing with prejudice the Complaint (ECF No. 1) of Plaintiff the Parent Project for Muscular Dystrophy Research ("PPMD") and all its claims asserted therein, and granting such other and further relief as the Court may deem just and proper. In support of the Motion to Dismiss, NCH incorporates all facts and arguments set forth in the accompanying memorandum of law.

Dated: January 31, 2023          Respectfully submitted,

_/s/ William G. Porter_____
William G. Porter, Trial Attorney (0017296)
Kara M. Mundy (0091146)
**Vorys, Sater, Seymour and Pease LLP**
52 East Gay Street
Columbus, OH 43215-1008
Tel: (614) 464-5448
Fax: (614) 719-4911
wgporter@vorys.com
kmmundy@vorys.com


John V. Gorman, Esq. (PHV)
**Morgan, Lewis & Bockius LLP**
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Tel: (302) 574-7297
Fax: (302) 574-3001
john.gorman@morganlewis.com

_Counsel for Defendant The Research Institute at Nationwide Children's Hospital_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE PARENT PROJECT FOR MUSCULAR DYSTROPHY RESEARCH, INC, | : : : : | |
| *Plaintiff,* | : : : | Civil Action No. 2:22-cv-04432-MHW-EPD |
| v. | : : : | Judge Michael H. Watson |
| RESEARCH INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL, d/b/a THE ABIGAIL WEXNER RESEARCH INSTITUTE, | : : : : : | Magistrate Judge Elizabeth A. Preston Deavers |
| *Defendant.* | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**DISMISS BY DEFENDANT THE RESEARCH**
**INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL**

**I.     INTRODUCTION**

Defendant The Research Institute at Nationwide Children's Hospital d/b/a The Abigail

Wexner Research Institute ("NCH") respectfully moves to dismiss the Complaint of Plaintiff The

Parent Project for Muscular Dystrophy Research ("PPMD") pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.

Count I of the Complaint (Breach of Contract) fails to state a claim for relief under Rule

12(b)(6).  PPMD alleges that NCH breached a contract between the parties[1] because NCH has not

made "full" payment to PPMD in connection with money that NCH received under a license

---

[1] Outside the context of this motion, NCH disputes many of PPMD's allegations, including that PPMD is entitled to any portion of income that NCH receives from Sarepta under their license agreement.  However, in the context of this Rule 12 motion to dismiss, NCH treats PPMD's allegations as true.  *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012).

agreement with Sarepta Therapeutics, Inc. ("Sarepta"). However, under the plain and unambiguous language of the alleged contract, PPMD waived receipt of income from NCH until royalty income exceeds $500,000. While PPMD has pled that NCH has received "income" from Sarepta, it has not pled (nor can it plead) that there has been any applicable *royalty* income generated. Indeed, PPMD's Complaint concedes that there is no Sarepta product yet approved by the FDA for commercial sale that would generate royalty income. Under these facts as pled, PPMD has as yet no contractual right to payment from NCH, and the Court should dismiss the claim.

The Court lacks subject matter jurisdiction over Count II of the Complaint (Declaratory and Injunctive Relief) under Rule 12(b)(1). PPMD seeks a declaratory judgment and an injunction regarding the money owed to it under the parties' agreement, but there is no dispute ripe for adjudication. Under the plain language of the contract, PPMD's right to payment turns on contingent future events—*i.e.*, the generation of royalty income of more than $500,000. PPMD has not pled, and cannot plead, that such threshold will necessarily be met. As such, PPMD's demand for a judicial declaration is premature.

Count III (Indemnification) fails to state a claim for relief under Rule 12(b)(6). The alleged contract provides for indemnification of PPMD only in connection with "liability . . . arising out of the Investigator Grant." The Complaint fails to state facts that plausibly support that PPMD has incurred any such liability. Neither amounts allegedly owed to PPMD under the agreement, nor expenses incurred by PPMD in voluntarily asserting premature claims against NCH constitute "liabilities" of PPMD. As such, PPMD is not entitled to indemnification as a matter of law.

## II.     BACKGROUND

NCH is a pediatric research center dedicated to conducting cutting edge research, to identifying new approaches for the prevention, diagnosis, and treatment of childhood diseases, and to taking research discoveries from the lab to the patient's bedside.  Dr. Jerry Mendell, a renowned clinician and scientist in the Center for Gene Therapy at NCH, has focused his research on neuromuscular diseases including Duchenne muscular dystrophy (DMD), a rare genetic disease. (Compl. ¶¶ 6-8, ECF No. 1 at PageID 2-3.)  By June 2016, Dr. Mendell had drafted a grant proposal setting forth a clinical research plan to confirm the safety and efficacy of a DMD gene therapy treatment that he and his team had invented.  (Compl. ¶¶ 14-15, 18, ECF No. 1 at PageID 4-5.) In June 2016, Dr. Mendell presented his grant proposal to PPMD, a non-profit corporation that does not conduct research itself, but provides funding for research.  (*Id.;* Award Policy § 1, Compl. Ex. 2, ECF No. 1-1 at PageID 20.)

PPMD alleges that, on or about September 6, 2016, NCH and PPMD executed the written award document attached to the Complaint (the "Award").  (Award, Compl. Ex. 1, ECF No. 1-1 at PageID 15-16.)  According to the Complaint, PPMD agreed in the Award to provide funding to NCH to support Dr. Mendell's work.  (*Id.*; Compl. ¶ 17, ECF No. 1 at PageID 5.)  The Award states that "the undersigned . . . agree to fully comply with the terms described in this award letter and those described in the accompanying PPMD Policy Manual for the Investigator Award." (Award, Compl. Ex. 1, ECF No. 1-1 at PageID 16.)  The "PPMD Policy Manual for the Investigator Award" included in the Award attached to the Complaint (hereinafter, the "Award Policy"), in turn, states PPMD is an "organization formed . . . under the laws of . . . Ohio" and that "[g]rants awarded through PPMD's Research Program are subject to Organization's Intellectual Property Policy."  (Award Policy §§ I, XI, Compl. Ex. 2, ECF No. 1-2 at PageID 20, 22.)  The accompanying "Intellectual Property Policy" (hereinafter, the "IP Policy") states that

"inventions . . . may be made in the course of research supported by PPMD."  (IP Policy, Comp. Ex. 2, ECF No. 1-2 at PageID 25.)  The IP Policy provides for the reporting to PPMD of inventions "discovered or first reduced to practice in the performance of research supported in whole or in part by PPMD."  (*Id.*)  The policy further states that "PPMD shall participate in the income derived from the invention," and that the "amount of PPMD's participation shall be guided by the principle that PPMD's sharing of income shall be in proportion to PPMD's portion of support for the work or research giving-rise to the invention."  (*Id.*)  However, the IP Policy provides that PPMD is *not* entitled to income before a specific threshold is met, *i.e.,* it states that PPMD "waives receipt of *income* until the *royalty income* . . . from the invention exceeds $500,000."  (*Id.*) (emphasis added).[2]

The Award Policy further states that NCH agreed to "indemnify, defend and hold PPMD . . . harmless in connection with all liability . . . arising out of the Investigator Grant, including all associated costs, damages and expenses, including reasonable attorney's fees." (Award Policy § XVII, Compl. Ex. 2, ECF No. 1-2 at PageID 22.)

Independent of the alleged Award, on October 8, 2018, NCH entered into a license agreement with Sarepta (the "Sarepta license").  (Compl. ¶¶ 21, 23, 28, ECF No. 1 at PageID 6, 8.)  According to PPMD, Sarepta agreed in this license to pay NCH certain amounts for an "Invention" for which PPMD purportedly provided funding.  (*Id.* at ¶ 28, PageID 8.)  PPMD admits in its Complaint that Sarepta has not yet received FDA approval to commercially sell the Invention.  (*Id.* at ¶ 27, PageID 7.)  While PPMD alleges that Sarepta has paid NCH $ 38 million in "income"

---

[2] Although PPMD ignored this crucial contract term in the Complaint, the Court should not.  The Court may consider the terms of a contract attached to a complaint at the motion to dismiss stage. *See Olde Town Medications & Sundries, LLC v. Feigenbaum*, Case No. 1:08-cv-17, 2008 WL 11350339, at *2 (S.D. Ohio Apr. 25, 2008) (citing *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d, 327, 335-36 (6th Cir. 2007)).

"for the Invention" under the Sarepta license, and that NCH "may" receive more income, "particularly if the FDA approves" the DMD gene therapy treatment for sale, PPMD has *not* alleged that Sarepta has paid NCH any *royalties*, or that any *royalty* income has been generated by any purported Invention governed by the Award. (*Id.* at ¶¶ 29, 30, PageID 8.)

Despite that the Award establishes a minimum royalty income threshold that must be met before NCH pays PPMD, and that PPMD knows that there is no approved Sarepta product that could be sold to generate royalty income, PPMD rushed to this Court and commenced this action asserting three causes of action. In Count I, PPMD alleges that NCH has breached the Award for failure to pay full payment. In Count II, PPMD seeks a declaration adjudicating what NCH owes PPMD under the Award, and an injunction requiring NCH to pay such amounts. In Count III, PPMD seeks indemnification for what it alleges it has "suffered" as a result of NCH not paying PPMD, and of NCH not calculating PPMD's share of possible future income.

## III.  ARGUMENT

### A.  Standards of Review.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts that, taken as true, state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must include factual allegations "respecting all the material elements to sustain a recovery under *some* viable legally theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original). "[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Id.* at 437. Accordingly, where the facts as pled establish no claim to relief, the court must dismiss the complaint. *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 930 (S.D. Ohio 2012) ("[I]f the facts alleged are insufficient to state a valid claim . . . dismissal of the action is proper."); *see also Gorsha v. Greenwich Ins.*

*Co.*, No. 2:20-cv-10, 2021 WL 1721020, at *5 (S.D. Ohio Apr. 30, 2021) (dismissing action because facts as pled established that the insurance contract excluded the asserted claims from the policy).

The plaintiff has the "burden of establishing that subject matter jurisdiction exists." *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014). The Court must dismiss a complaint when it does not allege facts sufficient to make out subject matter jurisdiction. *Howard v. City of Detroit*, 40 F.4th 417, 422 (6th Cir. 2022) (explaining a facial attack to subject matter jurisdiction); Fed. R. Civ. P. 12(b)(1). In reviewing a "facial attack on the subject matter jurisdiction . . . the trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**B.     The Court Should Dismiss Count I For Failure To State A Claim.**

The Court should dismiss PPMD's breach of contract claim (Count I) pursuant to Rule 12(b)(6) because PPMD has not pled facts showing that NCH breached the Award. PPMD has not plead and cannot plead that the Award's $500,000 royalty income threshold for NCH payment has been met.

Under Ohio law,[3] a breach of contract claim requires a showing of "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007). A defendant breaches a contract where it "fails to perform according to the terms of the contract or acts in a manner that is contrary

---

[3] At the time of the Award, PPMD and NCH were both organized and based in Ohio. (Award Policy, Compl. Ex. 2, ECF No. 1-2 at PageID 20; Compl. ¶3, ECF No. 1 at PageID 2.) Thus, Ohio law should govern the interpretation of the agreement. *See Power-Tek Sols. Servs., LLC v. Techlink, Inc.*, 403 F.3d 353, 357 (6th Cir. 2005) (Under Ohio choice-of-law principles, "the rights and duties of the parties are determined by the laws of the state with the most significant relationship to the transaction and the parties.") (internal quotations omitted)

to its provisions." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Jarupan*, 878 N.E.2d at 73). Construction of written contracts is a matter of law. *Corder v. Ohio Edison Co.*, 166 N.E.3d 1180, 1186 (Ohio 2020). When language in a contract is clear and unambiguous, a court may look no further than the writing itself to ascertain the parties' intent. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978). The Court must "give the terms of the contract their plain and natural meaning." *St. Marys Foundry, Inc. v. Emps. Ins. of Wausau*, 332 F.3d 989, 992 (6th Cir. 2003) (applying Ohio law).

PPMD alleges that NCH breached the Award by failing to "make complete and full payment of money due to PPMD" based on "income" received from Sarepta. (Compl. ¶ 43, ECF No. 1 at PageID 10.) Under the clear and unambiguous terms of the Award, however, NCH has no obligation to make payment "until the *royalty income* . . . from the invention exceeds $500,000." (IP Policy ¶ 2(d), Compl. Ex. 2, ECF No. 1-2 at Page ID 25.) (emphasis added). While PPMD alleges that NCH has received *income* from Sarepta, it fails to allege that NCH has received any *royalty* income whatsoever. (Compl. ¶¶ 28-30, ECF No. 1 at PageID 8.) Indeed, PPMD could not so allege because, as it admits in its Complaint, there has been no approval of a licensed Sarepta product for commercial sale that would generate royalties. (*Id.* at ¶ 27, PageID 7.) *See Royalty*, *Black's Law Dictionary* (11th ed. 2019) ("royalty" defined as "payment—in addition to or in place of an up-front payment—made to an author or inventor for each copy of a work or article sold under a copyright or patent. Royalties are often paid per item made, used, or sold, or per time elapsed."). And while PPMD alleges that NCH has received $38 million in "income" from Sarepta, it does not (and cannot) allege that such amounts are *royalty* income. Because PPMD has not alleged that NCH received more than $500,000 in royalty income under the Sarepta license, and because PPMD contractually waived receipt of income until the $500,000 royalty income

threshold is met, PPMD cannot maintain a claim for breach of contract based on NCH's lack of payment.

### C.     The Court Should Dismiss Count II For Lack of Subject Matter Jurisdiction.

The Court should dismiss PPMD's claim for declaratory and injunctive relief (Count II) pursuant to Rule 12(b)(1).  Because PPMD is not now entitled to any payments from NCH, and it is uncertain that it ever will be entitled to such payments, the dispute raised by PPMD is not ripe.

"A court lacks jurisdiction over the subject matter if the claim is not yet ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002); *see also Louisville City Sch. Dist. Bd. of Educ. v. Ohio Ass'n of Pub. Sch. Emps. (OAPSE)/AFSCME Local 4 AFL-CIO*, No. 5:19-cv-1509, 2020 WL 1930131, at *7 (N.D. Ohio Apr. 21, 2020) (dismissing declaratory judgment claim pursuant to Rule 12(b)(1) for lack of ripeness).  The ripeness doctrine prohibits courts "from passing 'judgments on theoretical disputes that may or may not materialize.'" *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022).  The Declaratory Judgment Act "does not alter these rules or otherwise enable federal courts to deliver 'an expression of opinion' about the validity of laws." *Id.* (quoting *Saginaw Cnty. V. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)).  "[A] a claim is not ripe if it turns on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Trump v. New York*, 141 S.Ct. 530, 535 (2020)).  Accordingly, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).

Here, PPMD seeks a judicial declaration regarding income owed to PPMD by NCH, and an injunction requiring NCH to pay such amounts.  (Compl. ¶¶ 48-51, ECF No. 1 at PageID 11.)

However, as discussed in § III.C, *supra,* because PPMD has not alleged (and cannot allege) that the Award's $500,000 royalty income threshold has been met, NCH has no current obligation to pay PPMD.  Relatedly, NCH may not have a future payment obligation, since there is no guarantee that sufficient royalty income will be generated from the Sarepta license or otherwise.  As PPMD admits in the Complaint, the "Invention" has not been approved for commercial sale.    (Compl. ¶ 27, ECF No. 1 at PageID 7.)  As such, Sarepta may never pay NCH royalties.  PPMD's request for equitable relief thus turns on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Safety Specialty*, 53 F.4th at 1020 (quoting *Trump*, 141 S.Ct. at 535).

*If* and *when* the FDA approves Sarepta's application, and NCH receives more than $500,000 in royalty income from Sarepta, there could be a dispute between the parties over payment under the Award.  But "*[i]f* and *when* do not a ripe controversy make." *OverDrive Inc. v. Open E-Book F.*, 986 F.3d 954, 958 (6th Cir. 2021) (emphasis in original).  PPMD's count for declaratory and injunctive relief is premature and unripe, and the Court must accordingly dismiss it for lack of subject matter jurisdiction.

### D.    The Court Should Dismiss Count III For Failure To State A Claim.

The Court should dismiss PPMD's claim for indemnification (Count III) pursuant to Rule 12(b)(6) because PPMD has incurred no liability, and is not entitled to indemnification under the facts pled and the unambiguous language of the Award.

Any purported indemnification obligation of NCH to PPMD must be determined by the language of the Award itself. *See Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987) ("The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used.").  Here, the Award language is limited; the Award Policy unambiguously states that an indemnification obligation occurs only "in connection with all *liability . . . arising out of the Investigator Grant*, including all associated costs, damages and

9

expenses, including reasonable attorney's fees." (Award Policy § XVII, Compl. Ex. 2, ECF No. 1-2 at PageID 24.) (emphasis added). The Award does not contain language entitling parties to costs and attorney's fees incurred for claims of breach of the Award. *Stonehenge Land Co. v. Beazer Homes Invs., LLC*, 893 N.E.2d 855, 866 (Ohio Ct. App. 2008) ("Attorney fees are generally not recoverable in contract actions" unless "the parties contract to shift fees.").

PPMD's Complaint fails to adequately plead the existence of a "liability . . . arising out of the Investigator Grant" entitling PPMD to indemnification. The Complaint makes only a handful of generic references to PPMD "incur[ring]" and "suffer[ing]" unspecified "liability." (Compl. ¶¶ 38, 54, 55, ECF No. 1 at Page ID 9, 11, 12.) Such conclusory labels do not plausibly support that PPMD has suffered any actual liability, and are, in and of themselves, insufficient to maintain a claim. *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 906-07 (S.D. Ohio 2013) (granting motion to dismiss because "conclusory statements without reference to its factual context" were insufficient to state a breach of contract claim).

While PPMD does not specify what "liability" it has incurred, its allegations suggest that PPMD wants to misuse its indemnification claim to recoup legal fees for its present claims for payment under the Award. (*See, e.g.*, Compl. ¶¶ 54-55, ECF No. 1 at PageID 11-12 (alleging that PPMD has incurred "substantial liability, culminating in this Complaint and the amounts that will be necessary to prosecute this case," and liability resulting from NCH's "failures to pay the amounts properly owed to it and by RINCH's refusals to properly calculate PPMD's proportionate amount for purposes of receipt of future RINCH Invention Income").) But alleged amounts owed to PPMD under the Award, or claims for such amounts, cannot constitute a "liability" that would trigger the Award's indemnification provision. A "liability" is the "quality, state, or condition of being legally obligated or accountable" or the "legal responsibility to another or to society,

10

enforceable by civil remedy or criminal punishment." *Liability*, *Black's Law Dictionary* (11th ed. 2019); *see also Parkhurst Mall Corp. v. Taneyhill*, No. 2006-T-0082, 2007 WL 210781, at *4 (Ohio Ct. App. Jan. 26, 2007) ("The duty to indemnify against a liability arises when a court finds the indemnitee to be liable."). PPMD has not (and cannot) allege that NCH, or its Award to PPMD, has caused or exposed PPMD to accountability or liability to anyone. Further, construing "liability arising out of the Investigator Grant" to encompass attorney expenses voluntarily incurred by PPMD in connection with affirmative claims against NCH for breach of contract and declaratory judgment would be plainly contrary to the unambiguous language of the Award. *See Right-Now Recycling, Inc. v. Ford Motor Credit Co.*, 644 F. App'x 554, 558 (6th Cir. 2016) ("[I]ndemnity agreement[s] must be strictly construed.") (quoting *Linkowski v. Gen. Tire & Rubber Co.*, 371 N.E.2d 553, 556–57 (Ohio Ct. App. 1977)).

Even assuming *arguendo* that amounts contractually owed to PPMD under the Award could somehow constitute PPMD's "liability arising out of the Investigator Grant," PPMD's indemnification claim still fails. As explained above, PPMD has not pled cognizable claims for entitlement to payment under the Award. *See supra* § III (B)-(C). Accordingly, any expenses PPMD incurred in asserting its meritless claims are not "liabilities" that "aris[e] out of" the Award. *See Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 936 (Ohio 2011) ("'[A]rising out of' does not mean merely occurring on or slightly connected with but connotes the need for a direct consequence or responsible condition.").

Because PPMD has not adequately pled any "liability arising out of the Investigator Grant," it's indemnification claim fails as a matter of law.

11

## IV.    CONCLUSION

For the foregoing reasons, Defendant The Research Institute at Nationwide Children's Hospital d/b/a The Abigail Wexner Research Institute respectfully requests that the Court dismiss Plaintiff's claims against it with prejudice.


Dated: January 31, 2023                   Respectfully submitted,


                                          */s/ William G. Porter*
                                          William G. Porter, Trial Attorney (0017296)
                                          Kara M. Mundy (0091146)
                                          **Vorys, Sater, Seymour and Pease LLP**
                                          52 East Gay Street
                                          Columbus, OH 43215-1008
                                          Tel: (614) 464-5448
                                          Fax: (614) 719-4911
                                          wgporter@vorys.com
                                          kmmundy@vorys.com


                                          John V. Gorman, Esq. (PHV)
                                          **Morgan, Lewis & Bockius LLP**
                                          1201 N. Market Street, Suite 2201
                                          Wilmington, DE 19801
                                          Tel: (302) 574-7297
                                          Fax: (302) 574-3001
                                          john.gorman@morganlewis.com

                                          *Counsel for Defendant The Research Institute at*
                                          *Nationwide Children's Hospital*

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 31, 2023, I caused the foregoing to be electronically filed

with the Clerk of Court and served on all counsel of record via the CM/ECF filing system.


<u>*/s/ Kara M. Mundy*                </u>
Kara M. Mundy (0091146)