IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| The Parent Project for Muscular Dystrophy Research, Inc., | : | Case No. 2:22-cv-04432-HHW-EPD |
| Plaintiff, | : | Judge Michael H. Watson |
| v. | : | Magistrate Judge Elizabeth A. Preston Deavers |
| Research Institute at Nationwide Children's Hospital, Inc., d/b/a The Abigail Wexner Research Institute, | : | |
| Defendant. | : | |

**PLAINTIFF PARENT PROJECT FOR MUSCULAR
DYSTROPHY, INC.'S OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

Plaintiff Project Parent for Muscular Dystrophy, Inc. ("PPMD"), pursuant to Local Rule 7.2, submits this Opposition in response to Defendant Research Institute at Nationwide Children's Hospital, Inc. ("RINCH")'s Motion to Dismiss. As the Complaint shows, PPMD has met the *Twombly/Iqbal* plausibility pleading requirements for its claims and also satisfied the conditions for the Court to resolve PPMD's Declaratory Judgment request. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A plain reading of the allegations contained in the Complaint demonstrates that PPMD has alleged facts to show the parties entered into a contract which RINCH has breached by failing to pay the full amount it owes PPMD under it. In addition, the allegations in the Complaint disclose there is a present and ongoing dispute regarding the portion of RINCH income PPMD is owed and will be owed upon RINCH's receipt of additional invention-related income that warrants the exercise of the Court's

declaratory judgment jurisdiction. Third, as the jurisprudence of this Court has made clear, PPMD's contractual indemnity claim against RINCH is viable and plausible.

RINCH's Motion appears to ignore the well-established judicial principle that at this stage of the proceeding the Court is "to construe the complaint in a light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 725-26 (6th Cir. 2010) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). In adherence to this rule, PPMD has set forth detailed allegations to state plausible claims against RINCH. The Court should therefore deny RINCH's Motion.

## I. INTRODUCTION

This is a contract dispute over the correct and proper distribution of proceeds RINCH owes PPMD related to PPMD's funding of research to treat a debilitating genetic disorder, Duchenne Muscular Dystrophy ("DMD"). As part of a $2.2 million funding grant PPMD made to RINCH, RINCH agreed to pay PPMD a portion of income RINCH receives from a resulting invention corresponding to the proportion of PPMD's grant to the overall funding of the work or research giving rise to such an invention. The research funded by PPMD was a success, and has resulted in a very promising, much heralded gene therapy ("the Invention"). For this Invention, RINCH already has received substantial income, including royalty income, from a third party, Sarepta Therapeutics, and for which RINCH may receive much more.

There have been various disputes between the parties regarding how much PPMD is owed. Until recently, however, the principal contest has focused on RINCH's failure to pay the correct percentage to which PPMD was due, not *whether* RINCH had an obligation to pay

PPMD. In fact, RINCH has already paid PPMD $1,381,661.60 from proceeds RINCH has received from licensing the Invention. These payments total less than half of what RINCH already owes PPMD, but they plainly reveal RINCH's understanding that it has received sufficient royalty income to trigger its payment obligations to PPMD. But despite this effective acknowledgment by RINCH of its payment obligations to PPMD under the parties' contract, RINCH now argues it owes no money to PPMD on the fallacious proposition that RINCH has received no royalty income.

The core dispute between the parties thus far has been what percentage of RINCH's income from the Invention is owed to PPMD for past as well as future income, and not whether RINCH has received the threshold amount requiring payments to PPMD. That ship has sailed. RINCH's conduct in making three payments to PPMD totaling more than $1.3 million manifests RINCH's understanding of its obligations to PPMD under the Contract, despite the spin RINCH deploys now. The allegations in the Complaint therefore focus on RINCH's breach for failing to pay the full amount PPMD is already owed, and RINCH's past indication that it intends to continue breaching the contract going forward by short-paying PPMD. PPMD's Complaint presents a case and controversy that is ripe for resolution by this Court.

## II. FACTS

The following facts as set forth in the Complaint detail RINCH's breach. PPMD is a non-profit charitable organization formed by parents with children afflicted by DMD. (Compl. ¶ 2, ECF No. 1.) For years, PPMD has sought a cure for DMD, and has provided substantial funding for research and development toward that end. (*Id.*) In 2015, Patricia Furlong, the founding president of PPMD, began extensive discussions with Dr. Jerry Mendell, a researcher at RINCH, to fund the gene therapy work Dr. Mendell was pursuing. In 2016, Dr. Mendell, on behalf of

3

RINCH, submitted a proposal to PPMD requesting funding for this research in the amount of $2.2 million. (*Id.* ¶ 14.)

On September 16, 2016, RINCH signed a PPMD Investigator Award (the "Contract" or "Agreement"), a copy of which is attached as Exhibit 1 to the Complaint. The Contract was conditioned in part on RINCH's agreement that it would share with PPMD a portion of the income RINCH received for an Invention stemming from research to which PPMD contributed funding. The amount RINCH would pay PPMD would be in proportion to PPMD's contribution to the research or work giving rise to the Invention. (*Id.* ¶ 19.) Based on information available to it from RINCH, PPMD has calculated its percentage of the overall funding on the research to be 7.16%. (*Id.* ¶ 22.)[1]

In part due to PPMD's pivotal contribution, the Invention has proven to be commercially valuable to RINCH even before it has been approved for commercial sale. (*Id.* ¶¶ 23, 25.) On October 8, 2018, Sarepta entered into a license agreement with RINCH regarding the Invention. (*Id.* ¶ 28.) It is PPMD's understanding that pursuant to that license agreement, Sarepta has paid RINCH over $38 million. (*Id.* ¶ 29.) From those proceeds, RINCH has made three payments to PPMD totaling $1,381,661. (*Id.* ¶ 32.)

As noted above, even though RINCH has paid PPMD over $1.3 million, that figure is less than half of what RINCH actually owes PPMD to date. Applying the correct percentage of 7.16% to RINCH's income from the Sarepta license agreement, RINCH is contractually bound to pay PPMD $2,813,090. (*Id.* ¶¶ 32, 35.) RINCH used incorrect calculations in reaching the

---

[1] PPMD claims only a percentage, 7.16%, of the RINCH income related its license of the Invention because PPMD provided part, but not all, of the research funding used by RINCH to develop the Invention. Sarepta (among others) also provided research funding to RINCH. (*Id.* ¶ 23.) Sarepta's funding of RINCH's research is not a part of the income from the Invention to which PPMD makes reference herein.

4

lesser figure and offered no reason for doing so in its Motion. (*Id.* ¶¶ 33, 34.) Indeed, RINCH ignores this inconvenient fact entirely. RINCH's payments to PPMD, based on license income received by RINCH from Sarepta, alone dooms RINCH's motion. RINCH had to understand the term "royalty income" in its Contract with PPMD to include the pre-product revenue that RINCH received from Sarepta, which renders RINCH's motion baseless.

### III.  STANDARD OF REVIEW

The law governing motions to dismiss is well-settled. This Court has previously explained in a number of cases: "A claim survives a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. This Court has held that "a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *See also Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*, S.D. Ohio No. 2:06-cv-00443, 2007 U.S. Dist. LEXIS 26990, *4 (S.D. Ohio Mar. 27, 2007). This standard calls for a complaint to raise a reasonable expectation that discovery will reveal evidence of unlawful conduct. A pleading's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the pleading are true (even if doubtful in fact). Rule 12(b)(6) is read in conjunction with Fed. R. Civ. P. 8(a), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"; the moving party prevails on a motion to dismiss only when the Complaint "fails to meet this liberal standard." *Id.* At the motion to dismiss stage, a district court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

reasonable inferences in favor of the plaintiff. However, the non-moving party must provide more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Pres. Partners, Inc. v. Sawmill Park Props., LLC*, No. 2:22-cv-477, 2022 U.S. Dist. LEXIS 237659, *3-4 (S.D. Ohio Oct. 12, 2022) (internal quotations and citations omitted); *Dollison v. Antero Res. Corp.*, No. 2;21-cv-1619, 2022 U.S. Dist. LEXIS 205626, *4-5 (S.D. Ohio Feb. 11, 2022).

With respect to breach of contract claims, courts are not disposed to dismiss them at the pleading stage based on a disputed interpretation of a particular term in the contract. *See Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 971 (S.D. Ohio 2022); *Exact Software N. Am., Inc. v. Infocon Sys.*, No. 3:03-cv-7183, 2004 U.S. Dist. LEXIS 7580 (N.D. Ohio Apr. 16, 2004) (denying a motion to dismiss on grounds that the plaintiff was entitled to develop evidence to prove breach under the disputed contract language); *see also DeNune v. Consol. Capital of N. Am., Inc.*, No. 3:02-cv-7241, 2004 U.S. Dist. LEXIS 30084 (N.D. Ohio May 21, 2004) ("Contract interpretation is inappropriate for a motion to dismiss").

## IV. ARGUMENT

### A. PPMD HAS SET FORTH SUFFICIENT ALLEGATIONS TO SUPPORT ITS CLAIM FOR BREACH OF CONTRACT

In order to proceed with a claim for breach of contract under Ohio law, a plaintiff must set forth allegations to meet the following elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) the defendant's breach; and (4) damages or loss to the plaintiff. *See Dollison*, 2022 U.S. Dist. LEXIS 205626, *4-5 (denying defendant's motion to dismiss breach of contract claim; citing *Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451, 463 (6th Cir. 2017)). Clearly, PPMD has satisfied these predicate pleading elements. The Complaint sets forth detailed allegations that the parties entered into a contract in which PPMD

agreed to provide $2.2 million to RINCH for research to develop a potential therapy for DMD. In exchange for this funding, RINCH would pay PPMD a portion of the income RINCH received from any Invention proportionate to the percentage of funding PPMD provided giving rise to that Invention. PPMD met its obligations under the Contract by providing the funding to RINCH.[2] RINCH, however, breached its contractual obligations by failing to make complete payment of the money it owed PPMD under the terms of the parties' Contract. RINCH's failure to make complete payment to date (and RINCH's previous statements that it disputes the amount to which PPMD will be entitled going forward), has substantially damaged and will continue to damage PPMD. The detailed allegations in the Complaint elaborating on these facts satisfy PPMD's pleading requirements. With respect to PPMD's claims, PPMD does not rely on labels or conclusions, but identifies specific facts.

RINCH does not challenge the first two elements of PPMD's breach of contract claim. It concedes the parties have an enforceable Agreement and that PPMD met its end of the bargain by providing the agreed-upon funding to RINCH. Instead, RINCH argues that it did not breach its obligations based on the specious proposition that its obligations have not yet come due. That is, RINCH contends it only has to pay a share of its revenues resulting from specific sales of the Invention to consumers, and income from such sales has not yet reached $500,000. (RINCH's Motion to Dismiss ("Mot. to Dismiss") at 6-7.)

RINCH, however, does not dispute that it has already received license income directly related to the Invention for which PPMD contributed funding (Compl. ¶ 29), or that RINCH has already paid PPMD over $1.3 million based on the license income RINCH has received related

---

[2] As explained in the Complaint at ¶ 35, n.2, PPMD wrote checks to RINCH in the total amount of $2.2 million, but RINCH reported that it did not receive $75,000.

7

to the Invention. (Compl. ¶ 32.) RINCH's chief argument animating its Motion rests on the contention that PPMD cannot proceed with its claims because PPMD's Complaint did not specifically allege that RINCH has received more than $500,000 in *royalty* income—as RINCH has defined the term in its Motion. (Mot. to Dismiss at 6-8.)

In support, RINCH offers two flawed arguments. First, it argues that the term "royalty income" can only mean revenues received by RINCH from proceeds of each item embodying the Invention that is sold to the consumer public. (*Id.* at 7). Second, the more than $38 million that RINCH has received thus far through its license agreement with Sarepta cannot be royalty income because "there has been no approval of a licensed Sarepta product for commercial sale that would generate royalties." (*Id.*) To support its interpretation, RINCH relies exclusively on a definition of the term "royalty" found in the current edition of Black's Law Dictionary. That definition says "royalty" means "[a] payment — in addition to or in place of an up-front payment — made to an author or inventor for each copy of a work or article sold under a copyright or patent. Royalties are often paid per item made, used, or sold, or per time elapsed." *Royalty*, Black's Law Dictionary (11th ed. 2019).

But this definition is not exhaustive of all of the ways in which a royalty may be received. For example, even the version of Black's upon which RINCH relies says that "Royalties are *often* paid per item made, used, or sold or per time elapsed[,]" *Royalty*, Black's Law Dictionary (11th ed. 2019) (emphasis supplied), implicitly acknowledging that royalties *are not always* or uniformly based on per item sales or the other bases identified in the definition. Earlier editions of Black's, at least through the Sixth Edition, offered more expansive definitions of "royalty" such as "[c]ompensation for the use of property." *Royalty*, Black's Law Dictionary (6th ed.1990). Royalty was defined in Black's Fourth Revised Edition as follows: "[a] payment

8

reserved by the grantor of patent, lease of a mine, or similar right, and payable proportionately to the use made of the right by the grantee." *Royalty*, Black's Law Dictionary (4th ed. 1968). There is no reference in either definition to sales. The Oxford Dictionary of Law defines royalty as "a sum payable for the right to use someone else's property for the purpose of gain . . ." *Royalty*, Oxford Dictionary of Law (10th ed. 2022).

Courts have also recognized other not-so-restrictive definitions of "royalty." For example, in *Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056, 1071 (11th Cir. 2005), a case that included interpretation of a contract between two pharmaceutical companies involving the license of a component to a drug therapy, the court noted that "both parties intended 'royalty' to denote its traditional meaning: that Schering would pay Upsher *for the licenses and production rights* of Upsher's products." (Emphasis supplied). The court in *Sierra Club, Inc. v. C.I.R.*, 86 F.3d 1526, 1531 (9th Cir. 1996) (citing Black's Law Dictionary (6th ed. 1990), stated that "'royalty' commonly refers to a payment made to the owner of property for permitting another to use the property." These broader definitions of "royalty" illustrate that RINCH's effort to restrict the word's interpretation to only mean "a portion of individual product sales to consumers" is not commonly or uniformly followed.

Moreover, use of the term "royalty income" also appears later in Paragraph 3(d) of the Contract. This Paragraph provides that the parties also would negotiate "the fair share of the royalty income to be paid to the institution, inventor(s) or other parties having a right in the invention," if RINCH did not have an established policy and procedure for administering inventions, thereby enabling PPMD to determine disposition of Invention rights. (Compl. Ex. 1, ECF Doc #:1-2, 9.) This use of the term "royalty income" clearly indicates the parties understood the term to include licensing income, because if RINCH's present argument were accepted, the

9

term only would mean that in such event the "institution", *i.e.*, RINCH, the inventors, and any others with a right to the Invention, would not have any rights to receive income from the Invention unless there were product sales to consumers.

In the end, what is most important is what the parties understood the term to mean. In view of RINCH's course of performance in making the substantial payments to PPMD from the Sarepta license payments to RINCH, it is apparent the parties believed that RINCH's income from the Sarepta license agreement fall within the meaning of "royalty income," and that license agreement income greatly exceeded the royalty income threshold in the Contract. Otherwise, why would RINCH make three payments totaling over $1.3 million to PPMD if that $500,000 threshold was not met? RINCH's actions thus reflected a manifestation (or ratification) of the parties' mutual understanding that the license fees constituted royalty payments. *Cf. Marietta Health Care Physicians, Inc. v. Yoak,* No. 2:19-cv-5626, 2022 U.S. Dist. LEXIS 14703, *20 (S.D. Ohio Jan. 27, 2022) (the "practical construction made by the parties may also be considered by the court as an aid to its construction . . . when a dispute has arisen between the parties after a period of operation under the contract.") (quoting *City of St. Mary's v. Auglaize Cty. Bd. of Comm'rs,* 2007-Ohio-5026, 115 Ohio St. 3d 387, 393 (2007)). In sum, there is no factual support for RINCH's assertion that the parties intended the term "royalty income" to mean what RINCH now argues.

In any case, acceptance of RINCH's argument would be particularly inappropriate at this stage of the pleadings. As the Sixth Circuit has repeatedly made clear: "crediting the defendant's, rather than the plaintiff's version of facts — unduly raises the pleading standard beyond the heightened level of *Iqbal* and *Twombly*, forcing the plaintiff's well-pleaded facts to be not only plausible, but persuasive. That is not the appropriate burden at this stage of the litigation."

*Handy-Clay v. City of Memphis*, 695 F.3d 531, 548 (6th Cir. 2012), (quoting *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012)). Yet, that is exactly what RINCH is trying to do here: posit its own version of facts and urge the Court to adopt RINCH's current interpretation of the contract while exhorting the Court to ignore PPMD's fact-based allegations. That simply cannot be the basis for a motion to dismiss in this Circuit or with this Court.[3] *A fortiori*, this Court should deny RINCH's motion to dismiss PPMD's breach of contract claim.

      B.     PPMD'S REQUEST FOR DECLARATORY JUDGMENT IS RIPE

As part of its Complaint, PPMD has requested the Court to issue a declaratory judgment determining PPMD's "appropriate proportion of RINCH's income from the Invention." PPMD also requests a permanent mandatory injunction requiring RINCH to pay PPMD in perpetuity that appropriate proportion of RINCH's income from the Invention. (Compl. ¶¶ 50-51).

As this Court has previously explained, "before a court can grant relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, the court must determine whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy [and] reality to warrant the issuance of a declaratory judgment." *Cont'l Real Estate Cos. v. 31-W Insulation Co.*, No. 2:16-811, 2017 U.S.

---

[3] At a minimum, the inconsistency between RINCH's several and substantial payments to PPMD and its proffered new interpretation of the Contract terms appears to create an ambiguity, at least within RINCH, which also defeats RINCH's motion. As Judge Black recently explained in *Miranda*, 594 F. Supp. 3d at 971, "[g]enerally, interpretations of contracts, especially ambiguous ones—is a question of fact inappropriate for resolution on a motion to dismiss." *See also Heidtman Steel Prods. v. Faurecia Auto. Seating, Inc.*, 919 F. Supp. 2d 928, 931 (N.D. Ohio 2013) (denying a motion to dismiss a contract claim the court noted, "[b]ecause the contract is ambiguous, its interpretation presents a question of fact.").

11

Dist. LEXIS 235791, *20 (S.D. Ohio Sept. 28, 2017) (internal quotations and citations omitted). This dispute, and PPMD's Complaint, meet all of these predicates.

It is well-established that district courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Clifford v. Church Mut. Ins. Co.*, No. 2:13-cv-853, 2014 U.S. Dist. LEXIS 136505, *4 (S.D. Ohio Sept. 26, 2014) (quoting *Wilton v. Seven Falls. Co.*, 515 U.S. 277, 282 (1995)). Notably, the court in *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019), stated that district courts have "substantial discretion" in deciding whether to exercise jurisdiction under the Declaratory Judgment Act.[4]

The Sixth Circuit has laid out five factors to be considered in making that determination. *See Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d. 323, 326 (6th Cir. 1984). In abbreviated form, they are: 1) would the declaratory action settle the controversy; 2) would it serve a useful purpose in clarifying legal issues; 3) is the claim being used for "procedural fencing"; 4) would the action increase friction between state and federal courts; and 5) is there an alternative remedy that is better or more effective. *Id.* With respect to weighing these factors, the Sixth Circuit has acknowledged that it has "never indicated how these . . . factors should be balanced. . . ." *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 563 (6th Cir. 2008).[5]

---

[4] A motion to dismiss a claim for declaratory judgment is deemed to be a "facial attack" which "questions merely the sufficiency of the pleading." *Princeton Excess & Surplus Lines, Inc. v.. Caraballo,* No. 1:21-cv-01981, 2022 U.S. LEXIS 114429, *14 (N.D. Ohio June 28, 2022). In reviewing a facial attack, "courts must accept all allegations as true, and when reviewing the complaint, we look for a short and plain statement of the grounds for the court's jurisdiction." *Rote v. Zel Custom Mfg. LLC,* 816 F.3d 383, 387 (6th Cir. 2016) (internal citations and quotations omitted).

[5] Though these factors were initially used in cases where there were parallel state court proceedings, courts have come to conclude they should be considered whether or not there is an

Applying the *Grand Trunk* factors, it is evident this Court should not dismiss PPMD's declaratory judgment claim. The first factor plainly favors jurisdiction: PPMD is asking the Court to make a determination, based on the parties' Agreement, what percentage PPMD is due from income RINCH has received and will receive from the Invention. (Compl. ¶¶ 48-51). Such a ruling would completely settle the controversy between the parties, which is how much PPMD is entitled to receive for its contribution to the Invention. The second factor likewise strongly favors the exercise of jurisdiction for the same reasons. *See generally Q Holding Co. v. Repco, Inc.*, No. 5:17-CV-445, 2017 U.S. Dist. LEXIS 77365, *7 (N.D. Ohio May 22, 2017) ("Because the declaratory judgment and rescission claims are based on the same set of facts, it makes little sense to consider the rescission claim but decline to hear the declaratory judgment claim. Accordingly, the Court will not decline jurisdiction.").

The third and fourth factors are not applicable here, as there is no suggestion there is any "procedural fencing" involved or that somehow having this Court address the past and future payment issues subverts the jurisdiction of state courts. Finally, there is no reasonable or practical alternative remedy to PPMD's claims for relief: the controversy is set and past facts and threats of future actions warrant the Court's involvement. Judicial efficiency urges the Court to step in.

In its Motion to Dismiss, RINCH eschews any discussion of these factors. Rather, RINCH simply argues the parties' dispute is not ripe for resolution. (Mot. to Dismiss at 8.) RINCH maintains, in essence, that PPMD's right to receive income from RINCH is conditioned on RINCH first receiving $500,000 in royalty income, and PPMD did not specifically allege in

---

issue of state litigation. *See generally Cole's Place*, 936 F.3d at 938; *Clifford*, 2014 U.S. Dist. LEXIS 136505 at *5. Here, there is no separate state court action.

13

the Complaint that RINCH had received that amount. RINCH adds it may never receive such income. (Mot. at 9.) Therefore, RINCH argues, the Court should decline to get involved in this dispute.

RINCH cites a selection of cases from the Sixth Circuit in an attempt to buttress its argument, but those cases, upon careful inspection, prove to be inapposite. For instance, the leading case upon which RINCH relies is *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs,* 53 F.4th 1014 (6th Cir. 2022). That was a complicated insurance coverage case involving various parties. The Sixth Circuit affirmed the district court's decision to decline jurisdiction under the Declaratory Judgement Act in part because a series of intervening events, including separate litigation, would first have to occur before there would have been a basis to resolve the underlying dispute. *Id.* at 1022. That is clearly not the situation here. Another case upon which RINCH relies, *OverDrive, Inc. v. Open E-Book Forum*, 986 F.3d 954 (6th Cir. 2021), is similarly inapposite. That matter involved a potential copyright violation that could result only if certain unclear future events unfolded. *Id.* The court concluded that the facts underlying the request for declaratory judgment were too remote or speculative to warrant federal court intervention. *Id.* The facts of that case are well-removed from those at issue here.

In its appraisal of the ripeness issue, the court in *OverDrive* did capture the essence of the reasons for which a declaratory judgment is appropriate in this case: "Ripeness, the matter at hand, asks two questions. One: Does the claim arise in a concrete factual context and concern a dispute that is likely to come to pass? . . . Two: What is the hardship to the parties of withholding court consideration?" *Id.* at 957-58 (internal citations and quotations omitted). The answers to these questions in the present case unequivocally merit denying RINCH's motion to dismiss PPMD's claim for declaration judgment: there is an immediate factual dispute about money

owed, the resolution of which will dictate what percentage of RINCH Invention income PPMD should receive now and in the future, which, as the Complaint alleges, involves millions of dollars. (Compl. ¶ 30). Additional events arising under the license agreement between RINCH and Sarepta may well cause RINCH to receive additional Invention-related income. (Compl. ¶¶ 28, 30). PPMD currently suffers harm and should not have to file an additional lawsuit after this one to force RINCH to make good on what PPMD is due under the parties' Contract in the event RINCH receives additional Invention-related income.

The Supreme Court has previously explained in addressing the court's discretion under the Declaratory Judgment Act, that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 1 Ohio Law Abs. 627 (1923)). Following that logic, the court in *Metals v. Am. Int'l Specialty Lines Ins. Co.*, No. 5:22-CV-055-CHB, 2022 U.S. Dist. LEXIS 213496, *22 (W.D. Ky. Nov. 28, 2022), held that a dispute was ripe for declaratory judgment based on plaintiffs' allegations of past and present injury, which made it "all but certain" plaintiffs "alleged harm would come to pass." *Id.* at 24. Further, the court concluded, "it would be impractical and wasteful of all parties' resources to require [plaintiff] to amend its complaint . . . each time it submits a new claim which is denied . . ." *Id.* at 25. That is true in this case as well.

C. PPMD'S INDEMNITY CLAIM IS PLAUSIBLE AND NOT SUBJECT TO DISMISSAL

RINCH twists itself in knots arguing that PPMD cannot maintain its third cause of action for indemnification, all the while ignoring both the language of the contract and the previous holdings of this Court. Implicit in RINCH's argument is the misconception that for PPMD to

15

prevail on an indemnification claim, it must be liable to a third-party other than for its attorney's fees and related expenses. But this is not the case.

The Contract provides broad indemnification language, as follows:

### XVII. Indemnification

*To the greatest extent permitted by applicable law*, Nationwide Children's Hospital hereby agrees to *indemnify*, defend and hold PPMD, its directors, trustees, officers, employees, agents and consultants harmless *in connection with all liability directly or indirectly arising out of the Investigator Grant, including all associated costs, damages, and expenses, including reasonable attorney's fees*. Nationwide Children's Hospital acknowledges that PPMD is a passive grantor and has not participated in the design of the Research Plan and will not participate in the conduct of the Investigator Grant.

(Emphasis added.) Judge Marbley considered similarly broad indemnification language in *Battelle Mem. Inst. v. Nowsco Pipeline Servs.*, 56 F. Supp. 2d 944, 946 (S.D. Ohio 1999): "CLIENT [Nowsco] agrees to indemnify and hold BATTELLE harmless from any and all liability, claims, demands, damages, and all costs and expenses arising out of BATTELLE's performance under this agreement . . ." In *Battelle*, the Court found that "[c]ourts in the Sixth Circuit are uniform in viewing the word 'indemnify' as analogous to 'reimburse'" and concluded that, unless parties specifically limit the scope of an indemnification provision to third-parties, "indemnification clauses may apply to damage suffered by contracting parties themselves." *Id.* at 950-51; *see also Pay(q)r, LLC v. Sibble*, Case No. 5:15cv1038, 2015 U.S. Dist. LEXIS 173465, *34-37 (N.D. Ohio Dec. 31, 2015) (finding that indemnification was not limited to third parties, the parties had not provided any such limitation, and the indemnification provision provided appropriate recourse under the contract).

Indeed, Judge Zouhary of the Northern District of Ohio more recently found that indemnification provisions can apply to liability for breach of contract. In *Minster MinMun02, LLC v. Vill. of Minster*, the plaintiff alleged that the defendant breached a contract between the

16

parties by terminating the contract without cause. No.3:20-CV-1784, 2021 U.S. Dist. LEXIS 249521, *7-8 (N.D. Ohio Nov. 5, 2021). The court interpreted a contractual provision that stated, with certain limitations, that "[e]ach Party shall at all times indemnify, defend, and hold the other Party harmless from, any and all damages, losses, claims, including claims and actions against each other or relating to injury to or death of any person or damages to property, demand, suits, recoveries, costs and expenses, court costs, attorney fees, and all other obligations . . . arising out of [a Party's] . . . failure to meet its obligations under the Agreement. . ." *Id*. at *3. The court concluded that this indemnity language covered actual or direct damages caused between the parties (but not, pursuant to limitations in the contract, lost profits). *Id*. at *9.

The indemnification language at issue in the instant case is similarly broad. The contract clearly provides for indemnification of "all associated costs, damages, and expenses, including reasonable attorney's fees . . . in connection with all liability directly or indirectly arising out of the Investigator Grant." (Compl. Ex. 2 at 7.) Despite RINCH's blanket assertion in its Motion that the contract contains no fee shifting provision, that is exactly what this provision does. PPMD has spent significant funds and effort over the course of several years to enforce its rights under the contract. Pursuant to its terms, PPMD is entitled to reimbursement for the costs, expenses, and attorney's fees it has incurred in pursuit of such enforcement. PPMD has stated a plausible claim for indemnification under the terms of the Contract, and RINCH's attempt to dismiss Count III of the Complaint is without merit.

17

## IV. CONCLUSION

For the many reasons set forth above, Plaintiff Parent Project for Muscular Dystrophy requests that the Court deny Defendant RINCH's Motion to Dismiss.

Respectfully submitted,

Date: March 3, 2023

/s/ *David P. Shouvlin*
David P. Shouvlin (0066154)
C. Darcy Jalandoni (0086981)
Porter Wright Morris & Arthur LLP
41 South High Street, Suites 2800-3200
Columbus, OH 43215
(614) 227-2045 (t)
dshouvlin@porterwright.com
djalandoni@porterwright.com

Of Counsel:

Kenneth I. Schaner
David M. Lubitz
Schaner & Lubitz, PLLC
4550 Montgomery Avenue
Suite 1100N
Bethesda, MD 20814
(240) 482-2849 (t)
(240) 482-2849 (t)
ken@schanerlaw.com
david@schanerlaw.com

18