**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE PARENT PROJECT FOR MUSCULAR DYSTROPHY RESEARCH, INC, | : : : : : |
| *Plaintiff,* | : Civil Action No. 2:22-cv-04432-MHW-EPD : |
| v. | : Judge Michael H. Watson : |
| RESEARCH INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL, d/b/a THE ABIGAIL WEXNER RESEARCH INSTITUTE, | : Magistrate Judge Elizabeth A. Preston Deavers : ORAL ARGUMENT REQUESTED : : : : |
| *Defendant.* | : : |

**MOTION TO COMPEL BY DEFENDANT THE RESEARCH
INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL**

Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Defendant the Research Institute at Nationwide Children's Hospital doing business as the Abigail Wexner Research Institute ("NCH") respectfully moves this Court to compel Plaintiff The Parent Project for Muscular Dystrophy Research ("PPMD") to provide all documents and information responsive to NCH's Interrogatories 5-7 and Requests For Production ("RFP") 12, 23, 24, 26-30.  In support of this motion, NCH incorporates all facts and arguments set forth in the accompanying memorandum of law.  NCH certifies that it has in good faith conferred with PPMD about the issues in this motion.

Dated: June 21, 2023

Respectfully submitted,

*/s/ William G. Porter*
William G. Porter, Trial Attorney (0017296)

1

William G. Porter, Trial Attorney (0017296)
Kara M. Mundy (0091146)
**Vorys, Sater, Seymour and Pease LLP**
52 East Gay Street
Columbus, OH 43215-1008
Tel: (614) 464-5448
Fax: (614) 719-4911
wgporter@vorys.com
kmmundy@vorys.com


John V. Gorman, Esq. (PHV)
**Morgan, Lewis & Bockius LLP**
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Tel: (302) 574-7297
Fax: (302) 574-3001
john.gorman@morganlewis.com

*Counsel for Defendant The Research Institute at Nationwide Children's Hospital*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL BY DEFENDANT THE RESEARCH INSTITUTE AT NATIONWIDE CHILDREN'S HOSPITAL**

**I.   INTRODUCTION**

Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Defendant The Research Institute at Nationwide Children's Hospital d/b/a The Abigail Wexner Research Institute ("NCH") respectfully moves this Court to compel Plaintiff The Parent Project for Muscular Dystrophy Research ("PPMD") to provide all documents and information responsive to NCH's Interrogatories 5-7 and Requests For Production ("RFP") 12, 23, 24, 26-30.

**II.   BACKGROUND**

This is a breach of contract case.  PPMD commenced this action against NCH in December 2022.  Ex. A, Complaint, ECF No. 1.  In its complaint, PPMD alleges that NCH has breached: an "Investigator Award, in which PPMD agreed to provide funding to [NCH] in the amount of $2.2 million …."  *Id.* at PageID 5, ¶ 17.  PPMD attached the alleged award as "Exhibit 1" to its complaint ("Award").  *See* Ex. B, Corrected Exhibit. ECF 3.

The Award is <u>not</u> a self-contained document purporting to contain all of its terms. Rather, the Award is a signed two-page document that states, *inter alia*, "[t]he undersigned . . . agree to fully comply with the terms described in this award letter *and those described in the accompanying PPMD Policy Manual for the Investigator Award*."  *Id.* at PageID 32 (emphasis added).  There is no accompanying document purporting to be a "manual," but the Award is followed by a seven-page "PPMD Investigator Award Policy" which states that "[t]erms of this policy may be revised or altered from time to time.  Please ensure that you have the most current copy of our policy on file by downloading it at [PPMD website link]."  *Id.* at PageID 33.  This "PPMD Investigator Award Policy" also states that "[g]rants awarded through PPMD's Research

Program are *subject to Organization's Intellectual Property Policy*." *Id.* at PageID 37, § XI (emphasis added).

The "PPMD Investigator Award Policy" attached to the complaint is followed by a two-page "Parent Project For Muscular Dystrophy Research, Inc. Intellectual Property Policy." *Id.* at PageID 40-41.  This IP policy does not specifically reference NCH.  Rather, it generically references an "institution" and sets forth different policies depending on whether an institution has an established patent, intellectual property or technology transfer policy and procedure for administering inventions (*id.* at ¶¶ 2, 3).

In this action, PPMD alleges that NCH has breached the Award by not sharing with PPMD enough of the income that NCH has received under a license agreement with third-party Sarepta Therapeutics, Inc. ("Sarepta").  Ex. A. at PageID 8, ¶¶ 28-30 & PageID 10, ¶¶ 42-43.  The specific income-sharing provisions alleged to have been breached are not contained in signed Award document itself, but rather are contained in PPMD's IP policy (which is itself referenced in the PPMD Investigator Award Policy).  *Id.* at PageID 6, ¶¶ 19-20.

NCH propounded interrogatories and document requests upon PPMD on March 24, 2023.  *See* Ex. C, NCH Interrogatories; Ex. D, NCH Requests For Production of Documents.  PPMD served responses to those requests on April 24, 2023.  *See* Ex.C, PPMD Objections And Answers to NCH Interrogatories; Ex. F, PPMD Objections and Responses to NCH Document Requests.  The parties' counsel exchanged correspondence regarding PPMD's responses, and conferred by video on May 22, 2023.  On June 6, NCH counsel requested a discovery conference with the Court to discuss the present discovery dispute.  On June 14, Magistrate Judge Deavers conducted a teleconference and directed NCH to submit a motion to compel under the Court's rules.

**III. ARGUMENT**

    **A. The Court Should Compel PPMD To Produce All Requested Information and Documents Relating to PPMD Grants (Interrogatory Nos. 6 & 7 and Request For Production ("RFP") Nos. 23, 24 & 27-30)**

A central dispute in this case is the meaning and interpretation of the language of PPMD's own intellectual property policy. The IP policy submitted with the Complaint acknowledges that it relates to inventions that are created *during* research funded by PPMD:

- "PPMD recognizes that inventions having public health, scientific, business or commercial application or value may be *made in the course of research supported by PPMD*. It is the desire of PPMD that *such* inventions may be administered in such a manner that they are brought into public use at the earliest possible time. PPMD recognizes this may be best accomplished through patenting, copyrighting, and/or licensing of *such* inventions."

- "All inventions *discovered or first reduced to practice in the performance of research supported in whole or part by PPMD* shall be promptly reported in writing to PPMD . . . ."

- "PPMD shall participate in the income derived from the invention. PPMD's participation shall be determined within one year . . . after reporting of the invention to PPMD . . . . The amount of PPMD's participation shall be guided by the principle that PPMD's sharing of income shall be in proportion to PPMD's portion of support for the work or *research-giving rise to the invention*."

Ex. 2, PageID 40.

PPMD's claims in this case are based on an extreme interpretation of its own policy language -- *i.e.*, that the policy covers income that an institution receives from an invention that was discovered or first reduced to practice *before* PPMD provided funding to the institution. As such, PPMD is demanding that NCH share the income that third-party Sarepta pays NCH related to NCH inventions first discovered or reduced to practice *before* PPMD provided NCH funding under the Award.

While NCH contends the clear language of the IP policy does not support PPMD's interpretation, the Court may ultimately deem the PPMD policy ambiguous, in which case,

3

extrinsic evidence will be admissible to ascertain the intent of the parties. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted) (applying Ohio law). Thus, evidence of PPMD's intent regarding the application, effect or meaning of its own policy -- regardless of the specific institution to which the policy applies -- would be relevant.[1] Relatedly, PPMD's statements regarding the application, effect or meaning of identical or similar income-sharing language in other agreements with grant recipients would evidence PPMD's intended meaning of IP policy's language.

To discover such extrinsic evidence of PPMD's intent with respect to PPMD's own policy, NCH has requested information and documents regarding PPMD awards, grants, or agreements with parties (other than NCH) since 2012, that are subject to PPMD's IP policy and/or that provide for income sharing ("PPMD Grants). Specifically, NCH has requested:

- identification of PPMD Grant recipients (Interrogatory Nos. 6 & 7) and documents sufficient to identify such recipients (RFP No. 23);

- the PPMD Grants themselves (RFP No. 24);

- documents relating to PPMD's communications with PPMD Grant recipients on specific narrow topics, i.e., PPMD's IP policy (RFP No. 27) and income sharing (RFP No. 28);

- documents relating to PPMD Grant recipient income sharing (RFP No. 29); and

- documents regarding a dispute over PPMD Grant recipient income (RFP No. 30).

Ex. C at 4-5 (Interrogatory Nos. 6-7); Ex. D at 6-7 (definitions of "PPMD Grant" and "PPMD Grant Recipient") and 7-8 (RFP Nos. 23, 24 & 27-30).

PPMD has refused to produce information and documents in response to these requests, but none of its objections are legitimate.

---

[1] To be clear, the policy attached to the Complaint is a stand-alone document that, on its face, represents the policy of PPMD as an organization, and is not specific to NCH. Upon information and belief, PPMD was solely responsible for drafting the language of its own policy.

4

First, PPMD has objected to the requests on relevancy grounds. However, "[r]elevance is construed very broadly for discovery purposes." *Eischen v. Adaptation Financial Advisers, Inc.*, 2:21-cv-5837, 2023 WL 3522785, at *2 (S.D. Ohio May 18, 2023) (emphasis in original) (citations omitted). "'Relevant evidence' is broadly defined as evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence....'" *Id.* (citations omitted). As discussed above, NCH's requests are designed to seek evidence of PPMD's intent in crafting the language of its IP policy. PPMD's statements about its own policy need not be conveyed to NCH to be probative. *See, e.g., Ma v. Cincinnati Children's Hospital Medical Center*, 2020-Ohio-1471, 153 N.E.3d 866, ¶ 18 (1st Dist.). Indeed, where PPMD has entered agreements with institutions besides NCH that are also subject to PPMD's IP policy or that contain similar or identical income sharing language, and PPMD takes contrary positions with those parties than it is taking in this case, PPMD's statements would be highly relevant evidence of its interpretation of its IP policy as it applies in this case. NCH's requests are tailored to identify such other agreements and to discover PPMD's communications that would be relevant to the issues in this case.

Second, PPMD's objections that NCH's requests are not proportional, or its complaints the requests are overbroad or unduly burdensome,[2] are without merit. There is no reason to believe that the number of responsive PPMD Grants is voluminous. To the contrary, the most recent annual report on PPMD's website indicates that PPMD made approximately 275 research

---

[2] For the first time in its June 14 letter to the Court, PPMD argued that the NCH requests at issue are overbroad and burdensome. However, PPMD's responses to RFP Nos. 23, 24 & 27-30 do not set forth an objection on overbreadth or burdensomeness grounds. *See* Ex. F at 9-12. PPMD was required by rule to set forth any such objection to these requests immediately after quoting the requests. *See* S.D.Ohio Local Rule 26.1(a). Because PPMD did not make timely overbreadth or burdensome objections to these requests, they have been waived. *Casale v. Nationwide Children's Hosp.*, 2:11-cv-1124, 2014 WL12748231, *1 (S.D.Ohio 2014).

5

grants in total between 1996 and 2021. *See* Ex. H, PPMD 2021 Annual Report (found at https://www.parentprojectmd.org/wp-content/uploads/2022/07/PPMD-Annual-Report-2021-REV.pdf), at 6 (discussing PPMD's research support "[f]or over 25 years", and referencing "over 275 research grants"). NCH's requests would certainly not encompass all of these grants since its requests are limited in time to grants made since 2012. *See* Ex. C at 4-5 (Interrogatory Nos. 6-7); Ex. D at 6-7 (definitions of "PPMD Grant" and "PPMD Grant Recipient"). Further, even within that subset of more recent grants, NCH requests seek only grants subject to PPMD's IP Policy or to income sharing. If PPMD's experience with NCH is an indicator, responsive grants would constitute only a relatively small percentage of PPMD's total awards; numerous grants that PPMD made to NCH since 2012 are neither subject to a PPMD IP policy nor to income sharing provisions. *See* Ex. I (Collection of fifteen PPMD grants to NCH since 2012 other than alleged Award at issue in this litigation).

Further, searching for requested documents and information should not be some big undertaking. As evidenced by PPMD's various grants to NCH, *see* Ex. I, a given PPMD grant is not a lengthy document, and tends to incorporate documents in standard PPMD format; only a cursory review would be required to determine whether a given signed award incorporates an IP policy or references income sharing. Once responsive PPMD Grants are identified (if they in fact exist), it should not be difficult for PPMD to search for the other requested documents relating to those specifically identified grants (*i.e.,* communications with those PPMD Grant recipients about PPMD's IP policy or income sharing; documents relating to PPMD Grant recipient income sharing; and documents regarding a dispute over PPMD Grant recipient income). Indeed, there should not be a lot of places PPMD has to look to find such information. PPMD admits that it is a "small charity." *See* Revised Rule 26(f) Report, D.I. 20 at PageID 123.

6

Its website lists only twenty-five staff members, the vast majority of whom have titles suggesting they would not be involved with PPMD IP policy or income sharing as it relates to PPMD Grant recipients. *See* Ex. J, PPMD Website Page (found at https://www.parentprojectmd.org/about-ppmd/meet-the-staff/). There is no reason to think that responsive documents would be in the possession of more than a handful of PPMD custodians, at most.

Finally, PPMD should not be able to refuse requested documents or information on confidentiality grounds.[3] The Court has already entered a protective order in this case, *see* ECF 27, and there is no reason (and PPMD has identified none) why that order does not adequately protect any PPMD interest in the requested information. *See, e.g.*, *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 82-83, 85 (S.D.Ohio 1981) (Court compelled party to produce requested discovery objected to on confidentiality grounds because protective order adequately guarded against any disclosure of sensitive information); *see also High Point SARL v. Sprint Nextel Corp.,* No. 09-2269, 2011 WL 4008009, at *3 (D. Kan. Sept. 9, 2011) ( "Generally, the entry of a protective order limiting the disclosure of confidential information is sufficient to address a party's confidentiality concerns. At the time [plaintiff] asserted its objection, a protective order was already in place").

Thus, the Court should compel PPMD to fully answer Interrogatories 6 and 7 and produce documents responsive to RFP Nos. 23, 24 and 27-30.

### B. The Court Should Compel PPMD To Produce Documents Regarding Changes To PPMD IP Policy (RFP No. 26)

NCH requested that PPMD produce documents relating to changes to its IP policy. *See* Ex. D, RFP No. 26. Initially, PPMD refused to produce anything in response to this request. *See*

---

[3] PPMD did not assert confidentiality objections in response to NCH Interrogatory Nos. 6 and 7 or in response to RFP No. 23. *See* Ex. E at 6-7; Ex. F at 9.

7


Ex. F at 10.  During the parties' meet and confer, NCH clarified it would narrow this request to changes in PPMD's IP policy since 2012.  PPMD thereafter agreed only to produce documents related to "changes to its intellectual property policies *with NCH*."  *See* Ex. G at 2.  This limitation (whatever it means) is inappropriate.

First, for reasons discussed in the previous section, documents relating to changes PPMD's IP policy, even as applied to other parties, may be extrinsic evidence of PPMD's intent regarding the version of the policy that PPMD alleges applies to NCH.  For example, documents reflecting how and why PPMD modified the IP policy shed light on PPMD's interpretation of the policy language.  Second, as discussed *supra* at § 2, the "PPMD Investigator Award Policy" that follows the alleged Award – which, in turn, invokes the PPMD IP policy – explicitly suggests that its terms could be revised or altered by PPMD.  *See* Ex. B at PageID 33, 37.  If that is the case, then changes to the IP policy may alter NCH's obligations to PPMD, and documents regarding such changes would therefore be relevant.  Accordingly, the Court should compel PPMD to produce documents in response to RFP No. 26.

### C. The Court Should Compel PPMD To Produce All Requested PPMD Agreements With Third-Party Sarepta (Interrogatory No. 5 and RFP 12)

Sarepta is a key third party in this case.  PPMD has put NCH's licensing agreement with Sarepta at the heart of this dispute, *see* Ex. A at PageID 8, ¶ 28, and has alleged that Sarepta stated that PPMD "provided incentive" for Sarepta to enter its agreement with NCH.  *Id.* at PageID 6-7, ¶ 23.  PPMD has also identified multiple Sarepta employees as having discoverable information that PPMD may use to support its claims in this case.  *See* Ex. K, PPMD Rule 26(a)(1) Initial Disclosures at 2-3 & 5.  As such, Sarepta's employees will almost assuredly testify in this case.

Accordingly, NCH requested that PPMD identify all of its agreements with Sarepta (*see* Ex. C, Interrogatory No. 5) and produce documents relating to such agreements (*see* Ex. D, RFP No. 12). While PPMD agreed to produce PPMD-Sarepta agreements "referencing the Award, research linked to it, or proceeds arising from it," *see* Ex. F at 6, PPMD has confirmed it is withholding additional responsive agreements. *See* Ex. G at 1. The Court should compel PPMD to provide these withheld agreements and documents relating to those agreements.

First, the requested information and documents are relevant. If Sarepta witnesses are going to be providing favorable testimony on PPMD's behalf, NCH is entitled to discover the full nature of the relationship between PPMD and Sarepta so it can explore, as necessary, any influence of PPMD on Sarepta, or any favorable bias of Sarepta or its witnesses towards PPMD. Even agreements that do not specifically reference the Award or its subject matter could influence Sarepta and/or its employees with regard to PPMD, and/or this litigation.

Indeed, a cursory review of the companies' respective websites reveals that there is an involved relationship between PPMD and Sarepta that goes far beyond PPMD's award to NCH. The Sarepta website directs visitors to PPMD's website. *See* Ex. L, Sarepta Website (found at https://www.duchenne.com/considering-clinical-trials/clinical-trials-what-expect); Ex. M (found at https://www.duchenne.com/living-with-duchenne/education). The PPMD website, for its part, prominently lists Sarepta as a "Partner." *See* Ex. N, PPMD Website Page (found at https://www.parentprojectmd.org/about-ppmd/partners/). It also identifies Sarepta as:

- a paying participant in the PPMD Drug Development Roundtable;
- a corporate sponsor that invests in PPMD;
- a "Project Partner" that has funded PPMD's pilot program(s);
- a "Founding Partner" of the Decode Duchenne project, which is administered by PPMD and the Duchenne Registry; and

9

- a "National Sponsor" of PPMD's End Duchenne Tour. *Id.*

NCH's requested discovery would also likely reveal the extent to which PPMD facilitates Sarepta's access to patients for participation in clinical trials. *See* Ex. H at 9 (PPMD Website discussing that its "access efforts" include "[b]uilding resources for the patient and clinical community to support navigation of access processes including access to unapproved investigational therapies."). NCH is entitled to determine the full nature of the relationship between PPMD and this key third party.

Second, the requested discovery is not disproportional to the needs of the case. The discovery seeks information about PPMD's agreements with only one third party, and there has been no suggestion that there exist so many agreements that PPMD cannot readily identify and produce responsive documents.

Finally, PPMD's confidentiality concerns are not a legitimate reason not to produce the requested information and documents. PPMD did not timely object to either Interrogatory No. 5 or RFP 12 on confidentiality grounds. *See* Ex. E at 4; Ex. F at 5-6. Even if they had, there is no reason why the existing protective order in this case does not adequately protect any confidentiality interest in the requested information. *See supra* at III.A.

The Court should compel PPMD to fully respond to Interrogatory No. 5 and RFP 12.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant The Research Institute at Nationwide Children's Hospital d/b/a The Abigail Wexner Research Institute respectfully requests that the Court enter an order compelling Plaintiff to provide all documents and information responsive NCH's Interrogatories 5-7 and Requests For Production ("RFP") 12, 23, 24 & 26-30.

Dated: June 21, 2023            Respectfully submitted,

                                            */s/ William G. Porter*
                                            William G. Porter, Trial Attorney (0017296)
                                            Kara M. Mundy (0091146)
                                            **Vorys, Sater, Seymour and Pease LLP**
                                            52 East Gay Street
                                            Columbus, OH 43215-1008
                                            Tel: (614) 464-5448
                                            Fax: (614) 719-4911
                                            wgporter@vorys.com
                                            kmmundy@vorys.com


                                            John V. Gorman, Esq. (PHV)
                                            **Morgan, Lewis & Bockius LLP**
                                            1201 N. Market Street, Suite 2201
                                            Wilmington, DE 19801
                                            Tel: (302) 574-7297
                                            Fax: (302) 574-3001
                                            john.gorman@morganlewis.com

                                            *Counsel for Defendant The Research Institute at Nationwide Children's Hospital*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2022, I caused the foregoing Motion to Compel and supporting Memorandum of Law to be electronically filed with the Clerk of Court and served on all counsel of record via the CM/ECF filing system.

*/s/ Kara M. Mundy*
Kara M. Mundy (0091146)