# EXHIBIT B

# EXHIBIT 1

Page 1 of 2



# Parent Project Muscular Dystrophy
LEADING THE FIGHT TO END DUCHENNE

August 25, 2016

Jerry Mendell, M.D.
Professor
Pediatrics, Neurology and Pathology
Director, Center for Gene Therapy
The Research Institute at
Nationwide Children's Hospital
700 Children's Dr. – RM WA 3011
Columbus, OH 43205

### * * * *NOTICE OF AWARD * * * *

On behalf of the Parent Project Muscular Dystrophy, Inc. ("PPMD"), we are pleased to inform you that your Investigator grant proposal titled, **"Systemic Delivery of AAVrh.74.MHCK7.microdystrophin for DMD"** has been approved for support.

The amount noted below includes institutional overhead of 5% and is in US dollars.

| AMOUNT AWARDED | SUPPORT PERIOD |
|---|---|
| $2,200,000 | 8/4/2016 – 8/3/2019 |

This award will be paid in 8 installments according to the following milestone schedule by PPMD's National Office and will be mailed to the address indicated on your application:

**Milestone Payments**

| Milestone | Description of Milestone | Est. Date | Description of Costs | Amount |
|---|---|---|---|---|
| Milestone 1 | Contract Execution; Consult with CBER regarding proposed micro-dys gene therapy trial; Acquisition of GMP Production Materials | 9/1/2016 | Acquisition of GMP Materials; Personnel and Costs associated with Animal Testing costs for Year 1 | $500,000 |
| Milestone 2 | Completion of Phase 1 of GMP Production | 1/1/17 | Phase 1 completion costs | $700,000 |
| Milestone 3 | Amendment for micro-dystrophin gene therapy clinical trial approved by FDA; Completion of Phases 2 and 3 of GMP production | 4/1/17 | cGMP Production and Quality Control Testing of Viral Vector (Phases 2 and 3) Completion Costs | $425,000 |
| Milestone 4 | Completion of Phase 4 of GMP Production | 5/1/17 | GMP Quality Control Testing (Phase 4) Completion Costs | $75,000 |
| Milestone 5 | Completion of Phases 5 and 6 of GMP Production; Initiate micro-dys gene therapy treatment for patient 1 | 9/1/17 | GMP Release Testing and CA Approval (Phases 5 and 6); Personnel and Costs associated with Gene Therapy trial for Years 2 and 3 (if | $260,000 |

Mendell Investigator Award

Page 2 of 2

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  | necessary). |  |
| Milestone 6 | Treat patients 2 and 3 with micro-dys gene therapy | 10/15/17 | Clinical trial-related costs | $100,000 |
| Milestone 7 | 3-month follow-up for DMD patients | 1/15/18 | Clinical trial-related costs | $70,000 |
| Milestone 8 | 6-month follow-up for DMD patients | 4/15/18 | Clinical trial-related costs | $70,000 |

Payable to: The Research Institute at Nationwide Children's Hospital

Contact: The Research Institute at Nationwide Children's Hospital
Research Accounts Receivable, Wexner 164
700 Children's Drive
Columbus, OH 43205-2664
Contact: Jennifer Knopsnider
Email: Jennifer.knopsnider@nationwidechildrens.org
Tel: 614-355-3411
Fax: 614-722-2716
Federal Tax ID 31-6056230A1

1. Receipt of the approved Institutional Review Board (IRB) for this project.
2. Successful meeting with FDA to approve trial design and product specification
3. A yearly progress report and report of expenditures are due no more than four weeks after 9/3/17 and 9/3/18.
4. A final progress report and report of expenditures are due no more than four weeks after the conclusion of the award.

Please return the award letter after appropriate signatures have been obtained via email to Elizabeth Habeeb-Louks (elizabethh@parentprojectmd.org), indicating acceptance of this award, within two (2) weeks of the date of this notice.

The undersigned accept this award and agree to fully comply with terms described in this award letter and those described in the accompanying PPMD Policy Manual for the Investigator Award.

_[signature]_      9/4/16
Principal Investigator      Date

_[signature]_      9/4/16
Authorized Institutional Officer      Date

cc: Pat Furlong, PPMD President
    Kelly Dougherty, Senior Vice President, Finance & Administration
    Financial Officer, Nationwide Children's Hospital

Mendell Investigator Award



# PPMD INVESTIGATOR AWARD POLICY

PPMD supports research aimed at developing treatments for Duchenne muscular dystrophy.

The PPMD Investigator Award is part of PPMD's Research Program, which has the mission of identifying and overcoming the inherent regulatory, cultural, financial and logistical barriers to bringing to market new therapeutic drugs or biologics for Duchenne and/or Becker muscular dystrophy.

*Terms of this policy may be revised or altered from time to time. Please ensure that you have the most current copy of our policy on file by downloading it at http://www.parentprojectmd.org/site/PageServer?pagename=Advance_grantees*

# PPMD Investigator Award Elements
## Quick Glance

| Overhead Allowed | No more than 5%, p.4 |
|---|---|
| Travel Expenses Allowed | $2000/year, p.4 |
| Equipment Purchases Allowed | Allowed, p.4 |
| Progress Reports | Every six months, p.5 |
| Report of Expenditures | Within four weeks of the close of the grant year, p.5 |
| Current IND, IRB Approvals | On file with PPMD before funds will be released, if humans will be used in research, or as described in Award Letter for multi-year projects, p.6 |
| Current IACUC | On file with PPMD before funds will be released if animals are used in research, p.6 |
| Grant Disbursements | Quarterly in evenly divided payments or as specified in Award Letter, p.4 |
| Request for no-cost extension | At least two weeks before the end of the grant term, p.4 |
| Publications | Should be submitted to PPMD upon acceptance; embargos will be honored, p.6 |

*This Quick Glance guide is provided as a convenience for PIs and University Financial Officers, but does not contain all of the requirements or information pertaining to this award. Please be familiar with the entire grant policy manual, below.*

2

# PPMD Investigator Award

## I. Purpose

The Parent Project for Muscular Dystrophy Research, Inc., is a national organization formed as a non-profit corporation under the laws of the State of Ohio ("**PPMD**"). PPMD's primary purpose is to support finding viable treatments and a cure for Duchenne and Becker Muscular Dystrophy through a coordinated and collaborated international, multidisciplinary, multi-institutional, focused approach to research.

PPMD has developed the "PPMD Investigator Award" to fund meritorious studies in academic laboratories directly related to the development of new therapies for Duchenne muscular dystrophy.

The PPMD Investigator Award is for one to two years and the payments are contingent on the availability of the research funds, submissions of respective progress reports and report of expenditures. Checks are made payable to Grantee's Institution and are issued quarterly unless other arrangements have been made on an individual basis. The institution's financial officer should establish an account from which the research expenses may be paid under the terms of the approved award.

## II. Eligibility

Those eligible to apply for an PPMD Investigator Award must:

1. Be a professional or faculty member at an appropriate educational, medical or research institution and be qualified to conduct and supervise a program of original research;
2. Have both administrative and financial responsibility for the grant;
3. Have access to institutional resources necessary to conduct the proposed research project; and
4. Hold a Doctor of Medicine, Doctor of Philosophy, Doctor of Science or equivalent degree.

## III. Award Requirements
1. Progress reports at designated time periods
2. Record of appropriate institutional/federal regulatory requirements
3. Timely publication of results

## IV. Duration of Grant

Grant period is for 1-3 years from the start date of the award. Renewals will be considered on a competitive basis if all grant requirements have been met during the first award period.

## V. Review Criteria

The application will be evaluated on

- Overall significance of proposal/impact towards developing new treatments for Duchenne muscular dystrophy
- Ability to leverage other funding sources and resources
- Appropriateness of research plan to achieve project goals
- Investigator has access to the appropriate equipment, space and personnel
- Quality and experience of the applicant demonstrate an ability to carry out the project plan
- Budget is realistic and commiserate with the proposed aims

Case 2:22-cv-04343-MWF-PD Doc #: 354 Filed 10/21/23 Page 67 of 123 PAGEID #: 3525

## VI. GRANT PAYMENT

Checks are made payable to the Principal Investigator's institution and are issued annually or semi-annually, according to the Award Letter terms. The institution's financial officer should establish an account from which research expenses may be paid under the terms of the approved award. The institution may not grant to any third party any security interest in the pending funds and should deposit the funds in an interest-bearing account, using and applying any interest earned as additional proceeds of the grant.

## VII. Authorized Expenses

When PPMD deems them justified by the research, the expenses identified below are permitted under the PPMD Investigator Award:

1. Indirect costs of no more than 5% of the total grant budget.
2. Salary and fringe benefits of any qualified professional at an appropriate level for the institution or industry as justified by the percent effort described in the application budget justification, except where already supported through other mechanisms.
3. Equipment and supply expenses necessary to fulfill the project's specific aims. Equipment purchased solely with PPMD funds belongs to and is considered the property of the investigator
4. Travel expenses directly related to the implementation of the proposed PPMD Investigator Award and capped at a maximum of $2000 per year, unless otherwise specified in the award letter. Travel expenses must be justified in the reports of expenditures due each year for active PPMD grants.
5. Disbursements to collaborators including institutions or contractors, *if approved* as line items in the project budget. Such disbursements should be documented in expense reports.

## VIII. Unauthorized expenses

The following expenses are not permitted under the PPMD research grants program:

1. Expenses normally covered by the indirect cost of the Principal Investigator's institution or business;
2. Fees for tuition, registration or other fees relating to academic studies; membership dues, subscriptions, books or journals; and/or for or related to moving from one institution to another
3. Any purpose other than to pay indirect costs of 5% and direct research costs as described in the project budget

## IX. Change in Budget

Changes in the budget of an awarded project may be requested by the principal investigator via detailed written notice to PPMD; such changes may include requests to redistribute the award allocations within budget categories or to reduce or increase the award amount. PPMD will review the circumstances under which such a change is requested and will provide a response within a reasonable period of time. PPMD will have no obligation to honor any such requests, although it may choose to do so at its discretion. A request for a "no-cost extension" must be submitted in writing at least two weeks before the end of the grant year for which the extension is requested.

## X. Change in Status

PPMD has the option of canceling an award at any time with notice for any of the following reasons:

1. If within six months from the scheduled funding start date or the established deadline date for receipt of required reports, PPMD has not received the applicable institutional supporting

        documentation (i.e., copy of IRB, IACUC approval letters); PPMD progress/milestone reports; or other documentation as defined by the PPMD Investigator Award Policy.
2. Availability of Organization resources are limited to the extent that continuation of funding of research grants must necessarily be placed on temporary or indefinite hold.
3. For any violation of the guidelines governing PPMD's research grants program as defined by the PPMD Investigator Award Policy.
4. If the grantee has made for the same project a simultaneous resubmission to NIH that is awarded during the duration of the PPMD Investigator Award.

Repayment of unexpended funds, less any uncancellable obligations, may be required by PPMD if a researcher dies or becomes disabled or terminates his or her employment with the Institution or company at any time prior to the end of the award period, and if PPMD chooses not to allow the institution or company to name a new principle investigator. Under these circumstances, any remaining unexpended funds, less any uncancellable obligations, must be returned to PPMD within two weeks and the grant will be considered terminated.

## XI. PATENT AND LICENSING POLICY INFORMATION

Grants awarded through PPMD's Research Program are subject to Organization's Intellectual Property Policy (see page 7).

## XII. Reporting Requirements

PPMD requires regular reports on expenditures, progress and regulatory compliance in order that we may meet the expectations of our donors for fiduciary diligence. Failure to comply with any PPMD grant reporting requirement, as described below, may result in pending payments being "held" until the project is in compliance, and any grant "on hold" more than six months may be terminated. Failure to receive final reports after completion of a project will be noted in subsequent applications for funding by the investigator.

1. Report of Expenditures

    An annual Report of Expenditures (ROE) is required documenting the amount of funding received to date by the institution or company, the disbursement of these funds by the investigator in the various budget categories, and the amount of any pending funds remaining. An ROE template will be sent to the institution or company with the award letter and is also available on line at www.parentprojectmd.org. The ROE must be completed and returned to PPMD no later than four weeks after the end of each year of the active grant. The final ROE is also due no later than four weeks after the completion of the award and should be submitted along with a check for any unexpended funds. All ROEs must be certified by the appropriate institutional or corporate financial officer.

2. Report of Progress

    Progress reports must be submitted six months after the start date of each annual award period and one month prior to the expiration dates of year one (and years two and three if support continues) unless otherwise specified in the award letter. A final report must be submitted no later than two (2) weeks following the grant termination date. PPMD may require additional progress reports as established by the time line for accomplishing project milestones. Grantees who do not submit final progress reports by the deadline stated here may be ineligible for future funding from the Organization.

3    Publications and Publicity

PPMD expects timely publication of the results of all research projects it supports and requires that every such publication - whether in peer-reviewed journals, meeting abstract formats, or in review articles or similar publications - contain the following statement or its equivalent: "*Supported by Parent Project Muscular Dystrophy*" or "*supported by PPMD.*" The same statement should be included at the end of any public presentation of data arising from the project. At the time that a paper or abstract is accepted for publication, PPMD should be alerted to the pending publication and the investigator must send a copy of the paper or abstract to PPMD. PPMD will abide by an embargo requirements. Failure to send notification of pending publications impairs the ability of PPMD to plan for its own announcements and such failure may be noted in reviews of subsequent applications from the investigator.

PPMD relies upon the public to fund its programs including research projects. To this end, it is accountable to its donors for how funds are spent and the results of that funding.

## XIII. Regulatory Compliance

PPMD must have documentation on file indicating that federal and institutional regulatory standards for human research, if applicable, are being met by the investigator for a PPMD-funded project.

1. Clinical Protocols: When human subjects, tissues and/or materials are to be used in a research project, it is the responsibility of the Principal Investigator and the institution to ensure that the institution has the following on file:
   a. A complete copy of the research protocol approved by the Institution's Human Subjects Review Board and a copy of that Board's current approval notice; If multiple sites are involved for clinical testing, PPMD should have copies of each site IRB approval.
   b. A copy of the patient informed consent form(s) to be used.

   A copy of the IRB's current approval notice *must be submitted to PPMD* either at the start of the award or in time for a milestone that involves human subjects, as indicated on the applicant award letter; when the IRB approval expires, usually within one year, a new current copy must be sent to PPMD if the project is still ongoing. Projects must be in compliance with all policies, rules and regulations governing clinical trials including those of the federal regulatory agencies, the respective university and institution and PPMD. Failure to provide current documentation of IRB approval within four weeks of the start date of a project (unless otherwise noted in the award letter) or within four weeks of the expiration of version on file may result in project payments being "held." A project that is on hold for more than six months may be subject to cancellation.

2. Food and Drug Administration: When experimental drugs and/or experimental medical devices are to be administered to patients, it is the responsibility of the Principal Investigator and the institution to ensure that the institution has the following on file:
   a. A complete copy of the Investigational New Drug (IND) and/or Investigational Device Exemption (IDE) application approved by the Federal Food and Drug Administration (FDA); and
   b. Copies of all correspondence during the application and award periods between the FDA and the PPMD Principal Investigator pertaining to the experimental drug(s) and/or device study.

## XIV. Patient Charges

PPMD requires that patients participating in experimental drug and/or device studies *not be charged directly* for any research procedures included under the project's approved protocol. Patients must be fully advised

6

about their responsibility for ancillary costs relating to participation in a research project -- travel, lodging, food, etc.

## XV. ANIMAL RESEARCH

PPMD investigators should use animals and animal tissues for research purposes only when reasonable and practical alternatives do not exist. When attainment of the specific aims of a project require the use of animals and/or animal tissues, a detailed justification must be included in the research grant application submitted to PPMD. The justification shall include statements confirming that institutional guidelines:

1. Are at least as protective as those of the National Institutes of Health;

2. Conform to all applicable laws and regulations;

3. Meet prevailing community standards for responsible scientific research;

4. Apply throughout the project to ensure the humane treatment of any animals involved in the project.

If animals are used in a PPMD-funded project, a copy of the current Institutional Animal Care and Use Committee ( IACUC) approval must be on file with PPMD before any disbursements of funds will occur. The IACUC should cover the specific project by name funded by PPMD.

## XVI. Conflict of Interest

Any potential conflict of interest the Principal Investigator(s) or collaborator(s) may have relating to the project must be revealed in the appropriate section of the application. Such conflict would include (but may not be limited to) having a proprietary interest that may be affected by the outcome of a research project. It is expected that PPMD grantees will observe the highest ethical standards in the conduct of research.

## XVII. Indemnification

To the greatest extent permitted by applicable law, Nationwide Children's Hospital hereby agrees to indemnify, defend and hold PPMD, its directors, trustee, officers, employees, agents and consultants harmless in connection with all liability directly or indirectly arising out of the Investigator Grant, including all associated costs, damages and expenses, including reasonable attorney's fees. Nationwide Children's Hospital acknowledges that PPMD is a passive grantor and has not participated in the design of the Research Plan and will not participate in the conduct of the Investigator Grant.

## PARENT PROJECT FOR MUSCULAR DYSTROPHY RESEARCH, INC.
## INTELLECTUAL PROPERTY POLICY

The Parent Project for Muscular Dystrophy Research, Inc., is a national organization formed as a non-profit corporation under the laws of the State of Ohio ("**PPMD**"). PPMD's primary purpose is to support finding viable treatments and a cure for Duchenne and Becker Muscular Dystrophy through a coordinated and collaborated international, multidisciplinary, multi-institutional, focused approach to research.

Although the primary purpose of PPMD in funding scientifically meritorious research is to advance its mission to support finding viable treatments and a cure for Duchenne and Becker Muscular Dystrophy, PPMD recognizes that inventions having public health, scientific, business or commercial application or value may be made in the course of research supported by PPMD. It is the desire of PPMD that such inventions be administered in such a manner that they are brought into public use at the earliest possible time. PPMD recognizes that this may be best accomplished through patenting, copyrighting, and/or licensing of such inventions.

"Invention" is any discovery, material, method, process, product, program, software or use, whether or not patented or patentable or copyrighted or copyrightable, that has an application of value such that its use, licensing, lease or sale can generate revenue.

1. All inventions discovered or first reduced to practice in the performance of research supported in whole or in part by PPMD shall be promptly reported in writing to PPMD when the invention is disclosed to the institution where the work was done, and prior to any public disclosure.

2. If the institution receiving or disbursing PPMD funds which supported the invention has an established and applicable patent, intellectual property or technology transfer policy and procedure for administering inventions, PPMD will defer to that policy with the following restrictions:

    a. Title to any invention shall reside in the institution; and title may be permitted to reside in the inventor(s) or any other person or institution with the prior written approval of PPMD, upon advice of PPMD's Legal Counsel and science advisors, except that no PPMD approval is required for title to reside in the United States government.

    b. PPMD also will be promptly notified in writing of a patent application being made, and any patent subsequently being issued, and/or of a license, lease, sale or revenue generating agreement concerning the invention prior to their execution. No patent or patent application, copyright or other intellectual property protection shall be abandoned without prior notification by the institution or inventor(s) to PPMD and giving PPMD the opportunity to take title to the invention to the extent permitted by law.

    c. Notwithstanding any other provision of this policy, PPMD shall participate in the income derived from the invention. PPMD's participation shall be determined within one year, or a reasonably prompt time, after reporting of the invention to PPMD by mutual agreement between the institution or other titleholder, and PPMD, with PPMD's rights hereunder not being affected if such determination is not made within said time period. The amount of PPMD's participation shall be guided by the principle that PPMD's sharing of income shall be in proportion to PPMD's portion of support for the work or research-giving rise to the invention. PPMD waives receipt of income until the royalty income (net of any direct out-of-pocket patenting costs) from the invention exceeds $500,000.

    d. The institution or other titleholder, when it licenses an invention to another party for commercialization, shall include provisions in the license obligating the licensee to

commercialize the invention in a diligent manner and include appropriate diligence requirements and milestones, and the institution shall monitor performance of the licensee. Unless otherwise agreed with PPMD, the institution or other titleholder shall agree that, if it or its designee or licensee has not taken effective steps to bring the invention to practical or commercial application through licensing or otherwise on terms that are reasonable in the circumstances within three years, or whatever is a reasonable longer time in the circumstances, after issuance of a patent or other clear determination of commercial value in an invention which is being administered by the institution and cannot show reasonable cause why it should retain title to and all rights in the administration of the invention for a further period of time, then, if no other parties have superior rights, PPMD shall have the right to require (i) assignment of said patent or intellectual property right to PPMD; (ii) cancellation of any outstanding exclusive licenses, (iii) the granting of licenses under said patent or intellectual property right on a nonexclusive, royalty-free basis or on other terms that are reasonable in the circumstances, or (iv) other reasonable disposition of the invention rights.

3. If the institution has no established and applicable patent, intellectual property or technology transfer policy and procedure for administering inventions, PPMD shall have the right to determine the disposition of the invention rights if no other parties have superior rights. In such cases, PPMD may:

   a. Decide that a patent application should be or not be filed, or other appropriate measures be taken to protect intellectual property rights in the invention.
   b. Release the invention to the institution, inventor(s) or their respective designee.
   c. Submit the invention to a qualified organization for administration and licensing.
   d. Determine by negotiation the fair share of the royalty income to be paid to the institution, inventor(s) or other parties having a right in the invention.
   e. License or make other arrangements for the application and use of the invention on an exclusive or non-exclusive, royalty or royalty-free basis as seems reasonable in the circumstances.
   f. If the invention is made with the joint support of PPMD and an agency or department of the United States Government, to the extent permitted by law or otherwise and without waiving any rights of appeal or contest, PPMD may defer to the patent, intellectual property or technology transfer policy of that agency or department upon receipt of a written statement by the appropriate agency or department notifying PPMD of its policy and procedure and identifying the rights and interests of PPMD in the invention in question.
   g. If any invention is made with the joint support of PPMD and some other health agency or funding organization, not an agency or department of the United States Government, the institution shall agree to negotiate with PPMD, the inventor(s) and that other organization for a mutually satisfactory disposition of the invention rights.

The right of PPMD to participate in revenue derived from an invention is not waived under this paragraph 3.

9